ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SOLID CORE CONSTRUCTION LLC<br><br>DEMANDANTE-APELADO<br><br>V.<br><br>CAMPO CARIBE LLC<br><br>DEMANDADO-APELANTE | KLAN202400571 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ203CV11428<br><br>Sobre:<br><br>Cobro de Dinero, Daños y Perjuicios por Incumplimiento de Contrato, Costa y Honorarios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece Campo Caribe LLC, (Campo Caribe o la Apelante) y solicita la revocación de la *Sentencia en Rebeldía* emitida el 8 de abril de 2023 por el Tribunal de Primera Instancia Sala de San Juan (TPI o foro primario), notificada por edicto el 11 de abril de 2024. Mediante la referida *Sentencia en Rebeldía* el foro primario declaró *Ha Lugar* la Demanda en Cobro de Dinero por Incumplimiento de Contrato presentada por Solid Core Construction LLC, (Solid Core o la Apelada) en contra de Campo Caribe y condenó a la Apelante a satisfacer a Solid Core la suma de $574,416.89 por concepto de deuda, más intereses por mora, además de las costas, gastos y honorarios de abogado incurridos por la Apelada en la tramitación del pleito, así como los intereses post sentencia.

Por los fundamentos que expondremos a continuación, revocamos la Sentencia en Rebeldía emitida por el foro primario.

I.

El 8 de diciembre de 2023, Solid Core presentó Demanda sobre cobro de dinero en contra de Campo Caribe por la suma de $574,416.89,

por concepto de pagos vencidos, líquidos, exigibles y no pagados al amparo de un Contrato de Servicios (*Supply and Installation Agreement)* otorgado entre las partes el 15 de octubre de 2022, más los daños y perjuicios causados por el incumplimiento, así como intereses por mora, costas, gastos y honorarios de abogado.[1]

El 2 de febrero de 2023, Solid Core presentó *Moción para Emplazar por Edicto.*[2] Mediante Orden de 5 de febrero de 2024, notificada el 7 de febrero del corriente año, el foro primario autorizó el emplazamiento por edicto a Campo Caribe solicitado por Solid Core, tras dicha parte acreditar y demostrar a satisfacción del TPI que Campo Caribe no había podido ser emplazada personalmente.[3] Así las cosas, el 9 de febrero de 2024 se expidió el Emplazamiento por Edicto dirigido a Campo Caribe.[4] El 29 de febrero de 2024 Solid Core presentó ante el foro primario *Moción Sometiendo Evidencia de Emplazamiento por Edicto,* publicado el 19 de febrero de 2024 en el periódico San Juan Daily Star.[5] Mediante *Orden* de 29 de febrero de 2024, notificada el 1 de marzo del corriente año, el foro primario tomó conocimiento de la publicación del edicto el 19 de febrero de 2024 y del envío de la comunicación por correo certificado el 21 de febrero de 2024.[6]

En lo pertinente, el 22 de marzo de 2024, Solid Core presentó *Moción de Anotación de Rebeldía a Campo Caribe LLC y Para Que se Dicte Sentencia en Rebeldía* al amparo de la Regla 45.1 y la Regla 45.2(a) de Procedimiento Civil, 32 LPRA Ap. V. R. 45.1 y R. 45.2(a).[7] En igual fecha, Solid Core presentó *Moción de Embargo Preventivo de Bienes Muebles e Inmuebles de la Parte Demandada en Aseguramiento de Sentencia.[8]*

---

[1] Véase páginas 1-7 del Apéndice de la Apelación (Entrada Núm. 1 de SUMAC).
[2] Véase páginas 82-85 del Apéndice de la Apelación. (Entrada Núm. 9 de SUMAC).
[3] Véase páginas 93- 94 del Apéndice de la Apelación. (Entrada Núm. 10 de SUMAC).
[4] Véase página 95 del Apéndice de la Apelación.
[5] Véase páginas 96- 171 del Apéndice de la Apelación. (Entrada Núm. 13 de SUMAC).
[6] Véase página 172 del Apéndice de la Apelación.
[7] Véase páginas 173-179 del Apéndice de la Apelación. (Entrada Núm.15 de SUMAC).
[8] Véase páginas 183-192 del Apéndice de la Apelación. (Entrada de SUMAC Núm. 16).

Mediante *Orden* emitida y notificada el 2 de abril de 2024, el foro primario **anotó la rebeldía a Campo Caribe** e instruyó a Solid Core a presentar proyecto de sentencia en el término de cinco días.[9] De igual forma, en igual fecha, el foro primario emitió y notificó ***Orden* a Solid Core en la que instruyó a dicha parte a acreditar en cinco días haber notificado la moción a Campo Caribe por correo postal o correo certificado e hizo constar que el sistema de SUMAC no notifica las mociones presentadas a las partes que no han comparecido al pleito**.[10]

En el interín, el 8 de abril de 2024, Solid Core presentó *Aviso de Desistimiento Voluntario y sin Perjuicio Exclusivamente de la Segunda Causa de Acción de la Demanda sobre Daños y Perjuicios por Incumplimiento Contractual.*[11] En igual fecha, Solid Core presentó *Moción en Cumplimiento de Orden* en la que alegó que procede la expedición exparte de la Moción de Embargo [12] Asimismo**, el 8 de abril de 2024, Solid Core presentó ante el foro primario *Moción en Cumplimiento de Orden y Sometiendo Proyecto de Sentencia en Rebeldía.*[13]**

**El 10 de abril de 2024, Campo Caribe presentó ante el foro primario *Urgente Moción Para que se Levante la Anotación de Rebeldía* a la que anejó una declaración jurada prestada por el Sr. Andrew Fong, Director de Campo Caribe, residente en Puerto Rico y otra declaración jurada prestada por su socio, el Sr. Michael Tenennbraum.[14]** En esencia, Campo Caribe alegó que el 8 de abril de 2024 recibió la *Orden* emitida por el TPI que le anotó la rebeldía, y que antes de recibir dicha Orden no había recibido ninguna moción de Solid Core solicitando que se le emplazara por edicto, que se le anotara la rebeldía, y que se dictara sentencia en rebeldía en su contra. Reiteró Campo Caribe que el Sr. Andrew Fong, estuvo fuera de Puerto Rico hasta

---

[9] Véase página 193 del Apéndice de la *Apelación.* (Entrada Núm. 17 de SUMAC).
[10] Véase página 194 del Apéndice de la *Apelación.* (Entrada Núm. 18 de SUMAC).
[11] Véase páginas 195-196 el Apéndice de la Apelación.
[12] Véase páginas 197-198 del Apéndice de la Apelación. (Entrada Núm. 20 de SUMAC).
[13] Véase páginas 199- 200 del Apéndice de la Apelación (Entrada Núm. 21 de SUMAC).
[14] Véase páginas 213-218 del Apéndice de la Apelación. (Entrada Núm. 23 de SUMAC).

el 7 de enero de 2024, que luego de esa fecha ha estado disponible para recibir el emplazamiento y que Campo Caribe no ha obstaculizado los procedimientos.

Finalmente, mediante *Sentencia en Rebeldía* de 10 de abril de 2023 **notificada por edicto el 11 de abril del corriente año**, el foro primario, declaró *Ha Lugar* la Demanda en Cobro de Dinero por Incumplimiento de Contrato presentada por Solid Core y condenó a la Apelante a satisfacer a Solid Core la suma de $574,416.89 por concepto de deuda, más intereses por mora, además de las costas, gastos y honorarios de abogado incurridos por la Apelada en la tramitación del pleito, así como los intereses post sentencia. Asimismo, el 10 de abril de 2024, foro primario emitió, además, una *Orden* referente a la solicitud de embargo preventivo y la prohibición de enajenar de Solid Core, en la que la instruyó a proveer certificación registral del inmueble y proyecto de orden y mandamiento.[15]

En la Sentencia en Rebeldía emitida el 8 de abril de 2023 y **notificada por edicto el 11 de abril del corriente año**, el foro primario hizo las siguientes determinaciones de hecho:

**DETERMINACIONES DE HECHOS**

1.  Solid Core es una compañía de responsabilidad limitada organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, cuya dirección física y postal es Solid Core es 1413 Ave. Ponce de León, Suite 504, San Juan PR 00918, con teléfono (787)349-7161.

2.  El 15 de octubre de 2022, Solid Core y Campo Caribe otorgaron el Contrato de Servicios, cuyo término de vigencia sería desde el 15 de enero de 2023 hasta el 31 de marzo de 2023, de acuerdo con las disposiciones de la Sección 3.2

3.  En éste, las partes acordaron una cuantía máxima de $4,530,232.98 por los servicios a ser prestados. La cuantía aludida incluye los gastos siguientes: "(i) five percent (5%) for the total general conditions; (ii) overhead cost of eight (8%) percent; and (iii) insurance costs of five-point seven percent (5.7%) of the Services total costs as outlined in the MEP Proposal".

---

[15] Véase página 207 del Apéndice e la Apelación.

4. El 7 de septiembre de 2023, Campo Caribe le notificó una carta a Solid Core sobre la terminación del Contrato de Servicios. A su juicio, Solid Core no le había provisto la información necesaria para que Campo Caribe emitiera el pago correspondiente y, además, planteó que Solid Core había abandonado el proyecto en cuestión. Por lo tanto, Campo Caribe optó por dar por terminado el Contrato de Servicios.

5. El 11 de septiembre de 2023, Solid Core le notificó una carta a Campo Caribe en respuesta a la carta fechada el 7 de septiembre de 2023. En esencia, Solid Core rechazó cualquier tipo de incumplimiento con el Contrato de Servicios y sostuvo que es Campo Caribe quien ha obviado sus obligaciones bajo dicho contrato con ánimo de no pagar la cuantía adeudada a Solid Core por el trabajo realizado. Además, aun cuando Campo Caribe no efectuaba ningún pago por los servicios realizados por Solid Core, esta última continuó con su labor.

6. Campo Caribe expresó que no realizaría pago alguno debido a la falta de información y/o documentación por Solid Core.

7. Debido a la falta de pago por parte de Campo Caribe resultó en que Solid Core se viera obligada a retirar su equipo y materiales del proyecto en cuestión. Es decir, Solid Core optó por no seguir prestando sus servicios a Campo Caribe si no recibía la compensación pactada en el Contrato de Servicios. Lo anterior, aunque Campo Caribe recibió información y documentación, incluyendo invoices, time sheets, certificaciones y otros documentos requeridos por Campo Caribe, por el trabajo realizado por la Parte Demandante.

8. Campo Caribe había efectuado anteriormente pagos a Solid Core basándose en el mismo tipo de datos, información y documentación provista por Solid Core con relación a los trabajos realizados en la suma de $574,416.89, los cuales Campo Caribe adeuda a Solid Core.

9. Las gestiones de cobro por parte de Solid Core para con Campo Caribe han resultado infructuosas.

10. A pesar de los requerimientos de pago hechos por Solid Core, Campo Caribe continúa en incumplimiento con sus obligaciones de pago y sin comparecer ante este Tribunal.

11. Campo Caribe ha incumplido con las obligaciones de pago al amparo del Contrato de Servicios y adeuda a Solid Core una suma de $574,416.89, más intereses por mora, la cual está vencida, es líquida e inmediatamente exigible.

En desacuerdo, el 12 de abril de 2024, Campo Caribe presentó *Urgente Moción de Reconsideración* ante el foro primario.[16] Allí expuso que antes del 8 de abril de 2024, Campo Caribe desconocía que Solid Core había solicitado que se le emplazara por edicto, que se le anotara la rebeldía y que se dictara sentencia en rebeldía en su contra. Sostuvo, además, que antes de notificarse por edicto la Sentencia en Rebeldía, solicitó al foro primario que dejara sin efecto la anotación de rebeldía y que Campo Caribe desea comparecer y presentar sus defensas afirmativas en el caso.

Mediante *Orden* emitida y notificada 20 de mayo de 2024, El foro primario declaró *No Ha Lugar* la *Urgente Moción de Reconsideración* presentada por Campo Caribe.[17] El TPI mantuvo la anotación de rebeldía a Campo Caribe así como la Sentencia en Rebeldía notificada por edicto el 11 de abril de 2024 y concluyó que Campo Caribe fue emplazada por edicto conforme a derecho y que no surge justa cusa por la cual no compareció dentro del término establecido en las Reglas de Procedimiento Civil.

Así las cosas, el 6 de junio de 2024 Solid Core presentó *Moción Reiterando Moción de Embargo Preventivo y Prohibición de Enajenar* a la que se opuso Campo Caribe el 7 de junio de 2024.[18] Mediante Orden de 6 de junio de 2024, notificada al día siguiente, el foro primario emitió *Orden de Embargo Preventivo y Prohibición de Enajenar*.[19]

Inconforme, Campo Caribe presentó el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

> ERRÓ EL TPI AL NO LEVANTAR LA ANOTACIÓN DE REBELDÍA EN CONTRA DE CAMPO CARIBE.
>
> ERRÓ EL TPI AL EMITIR UNA SENTENCIA EN REBELDÍA EN CONTRA DE CAMPO CARIBE.
>
> ERRÓ EL TPI AL EMITIR UNA ORDEN DE CONCEDIENDO EL EMBARGO PREVENTIVO Y PROHIBICIÓN DE ENAJENAR.

---

[16] *Véase* páginas 228-231 del Apéndice de la *Apelación*.
[17] Véase páginas 283-284 del Apéndice de la Apelación.
[18] Véase páginas 285-290 del Apéndice de la Apelación.
[19] Véase páginas 292-299 del Apéndice de la Apelación.

El 10 de julio de 2024, Solid Core compareció ante nosotros mediante *Alegato en Oposición a Apelación*. En ajustada síntesis, la Apelada sostiene que contrario a lo aseverado por Campo Caribe, referente a que no compareció al caso hasta que recibió la notificación de la *Orden* anotándole la rebeldía, la realidad es que Campo Caribe decidió no aceptar el envío por correo certificado con acuse de recibo que contenía la demanda y los documentos relacionados al Emplazamiento por Edicto, por lo que su incomparecencia no obedeció a que la dirección a la fue dirigida la correspondencia fuera incorrecta.

II.

A.

En lo pertinente a la anotación de rebeldía, la Regla 45.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 45.1, dispone lo siguiente:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).

> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

Es preciso destacar que el Tribunal Supremo de Puerto Rico ha expresado que, "[e]l propósito del mecanismo de la rebeldía es desalentar el uso de la dilación como estrategia de litigación". *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011). A su vez, ha afirmado que "la rebeldía 'es la posición procesal en que se coloca la parte que ha dejado de ejercitar su derecho a defenderse o de cumplir con su deber procesal'". *Íd.*, pág. 589. Los efectos de la anotación de rebeldía se resumen en que se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado en contra del rebelde". Regla 45.1 de

Procedimiento Civil, *supra*; *Íd.*, a la pág. 590. Asimismo, "se autoriza al tribunal para que dicte sentencia, si esta procede como cuestión de derecho". *Íd.*, a la pág. 589.

A grandes rasgos, la Regla 45.1 de Procedimiento Civil, *supra*, provee un remedio para las situaciones en las cuales el demandado no comparece a contestar la demanda o no se defiende de ninguna otra forma, por lo que no presenta alegación o defensa alguna contra las alegaciones y el remedio solicitado. *Íd.*; *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002). Además, aplica a manera de sanción en aquellas instancias en las que alguna parte en el pleito ha incumplido con alguna orden del tribunal. *Íd.*

La Regla 45.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 45.2, dispone que podrá dictarse sentencia en rebeldía en los casos siguientes:

> (a) Por el Secretario o Secretaria. — Cuando la reclamación de la parte demandante contra una parte demandada sea por una suma líquida o por una suma que pueda liquidarse mediante cómputo, el Secretario o Secretaria, a solicitud de la parte demandante y al presentársele declaración jurada de la cantidad adeudada, dictará sentencia por dicha cantidad y las costas contra la parte demandada cuando ésta haya sido declarada en rebeldía, siempre que no se trate de un(a) menor o una persona incapacitada.
>
> (b) Por el tribunal. — En todos los demás casos la parte con derecho a una sentencia en rebeldía la solicitará del tribunal, pero no se dictará sentencia en rebeldía contra un(a) menor o una persona incapacitada a menos que estén representados(as) por el padre, madre, tutor(a), defensor(a) judicial u otro(a) representante que haya comparecido en el pleito. **Si para que el tribunal pueda dictar sentencia o para ejecutarla se hace necesario fijar el estado de una cuenta,** o determinar el importe de los daños, **o comprobar la veracidad de cualquier aseveración mediante prueba o hacer una investigación de cualquier otro asunto, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas** o encomendar la cuestión a un comisionado o comisionada. **Cuando la parte contra la cual se solicita sentencia en rebeldía haya comparecido en el pleito, dicha parte será notificada del señalamiento de cualquier vista en rebeldía que celebre.**

En lo pertinente a la notificación de escritos, la Regla 67.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 67.1, dispone expresamente que no será necesario notificar a las partes en rebeldía por falta de comparecencia, excepto que las alegaciones en que se soliciten remedios

nuevos o adicionales contra dichas partes se les notificará en la forma dispuesta en la Regla 4.4, o en su defecto por la Regla 4.6, para diligenciar emplazamientos."

Por otra parte, en cuanto a la facultad del tribunal para dejar sin efecto una anotación de rebeldía, la Regla 45.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 45.3, dispone lo siguiente:

> "El tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada, y cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2."

Cuando la parte no puede utilizar la Regla 45.1 de Procedimiento Civil, *supra*, para conseguir el levantamiento de la anotación de rebeldía en su contra, necesita entonces probar la "causa justificada" que requiere la Regla 45.3 de Procedimiento Civil, *supra*. Esto es, la parte podría presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación, o probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que se puede ocasionar a la otra parte con relación al proceso es razonablemente mínimo. *Rivera Figueroa v. Joe's European Shop*, *supra* a la pág. 593. En este sentido, la justa causa a la que alude esta norma será evaluada considerando los siguientes criterios: (1) si el promovente tiene una buena defensa en sus méritos; (2) el tiempo transcurrido entre la anotación de rebeldía o la sentencia así dictada y la solicitud de levantamiento o de relevo de sentencias; y (3) el grado de perjuicio que pueda ocasionarle a la otra parte el relevo o levantamiento de la anotación de rebeldía. *Rivera Figueroa v. Joe's European Shop*, *supra* a la pág. 591; *Neptune Packing Corp. v. Wackenhut Corp.*, 120 DPR 283, 294 (1998).

En *Neptune Packing Corp. v. Wakenhut Corp.*, supra a la pág. 293, el Tribunal Supremo señaló, en el contexto de una solicitud de relevo de una sentencia en rebeldía que nuestra visión jurisprudencial es una vanguardista en lo que atañe al ideal de que los casos se ventilen en sus méritos". Esto es, el ideal que surge de nuestra jurisprudencia al

considerarse el relevo de una sentencia en rebeldía es que los casos se ventilen en sus méritos.

En *Neptune Packing Corp. v. Wakenhut Corp.*, supra, págs. 293-294, el Tribunal Supremo también señaló lo siguiente:

> Expresamente sostenemos que los criterios inherentes a la Regla 49.2 de Procedimiento Civil, *supra*, tales como si el peticionario tiene una buena defensa en sus méritos, el tiempo que media entre la sentencia y la solicitud de relevo, y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia, son igualmente aplicables cuando se solicita que una sentencia dictada en rebeldía sea dejada sin efecto.

En síntesis, para conseguir el levantamiento de la anotación de rebeldía, se necesita probar la "causa justificada" que requiere la Regla 45.3. de Procedimiento Civil, *supra*. Esto es, la parte podría presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación, o probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que puede ocasionarse a la otra parte con relación al proceso es razonablemente mínimo. *Rivera Figueroa v. Joe's European Shop*, supra.

Si bien a la luz de los parámetros expuestos en *Neptune Packing Corp. V. Wakenhut Corp.*, *supra*, la facultad de un foro de instancia para dejar sin efecto una anotación de rebeldía al amparo de la Regla 45.3 de Procedimiento Civil, *supra*, se enmarca en la existencia de justa causa, en *Díaz v. Tribunal Superior*, 93 DPR 79 (1966), el Tribunal Supremo señaló que esta regla debe interpretarse de manera liberal, resolviéndose cualquier duda a favor de que se deje sin efecto la anotación o la sentencia en rebeldía.

III.

Es la contención de Campo Caribe que incidió el foro primario al no levantar la anotación de rebeldía, al emitir una sentencia en rebeldía en contra de la Apelante y al conceder el embargo preventivo y solicitud de enajenar solicitados por Solid Core.

En el caso que nos ocupa, Campo Caribe solicitó al foro primario que dejara sin efecto la anotación de rebeldía. El 10 de abril de 2024,

Campo Caribe presentó ante el TPI *Urgente Moción Para que se Levante la Anotación de Rebeldía* a la que anejó una declaración jurada prestada por el Sr. Andrew Fong, Director de Campo Caribe, residente en Puerto Rico y otra declaración jurada prestada por su socio, el Sr. Michael Tenennbraum**.** Campo Caribe alegó que el 8 de abril de 2024 recibió la *Orden* emitida por el TPI que le anotó la rebeldía, y que antes de recibir dicha Orden no había recibido ninguna moción de Solid Core solicitando que se le emplazara por edicto, que se le anotara la rebeldía y que se dictara sentencia en rebeldía en su contra. Reiteró Campo Caribe que el Sr. Andrew Fong, estuvo fuera de Puerto Rico hasta el 7 de enero de 2024, que luego de esa fecha ha estado disponible para recibir el emplazamiento y que Campo Caribe no ha obstaculizado los procedimientos. Es decir, que Campo Caribe explicó que su falta de comparecencia se debió a la ausencia temporera de su director. Asimismo, Campo Caribe argumentó que mediante la Demanda presentada por Solid Core, la apelada intenta cobrar facturas fraudulentas que responden a un trabajo de construcción que nunca realizó por lo que solicitó al foro primario que levantara la rebeldía y le permitiera contestar la demanda presentada por Solid Core.[20]

Es preciso destacar que, sobre estos extremos, la Regla 45.2 (b) de Procedimiento Civil, *supra* dispone que el tribunal, deberá celebrar las vistas que crea necesarias y adecuadas con el fin de comprobar la veracidad de cualquier aseveración mediante prueba o hacer una investigación de cualquier otro asunto.

Asimismo, es doctrina reiterada que la parte que solicita que se deje sin efecto la anotación de rebeldía y la sentencia en rebeldía podría presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación, o probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que puede ocasionarse a la otra parte con relación al proceso es razonablemente mínimo. Véase, *Rivera Figueroa v. Joe's European Shop*, *supra, a la pág. 593.*

---

[20] *Véase* pág. 214 del Apéndice de la *Apelación*.

No obstante, surge del expediente que Solid Core acreditó ante el TPI los múltiples intentos realizados para emplazar personalmente a Campo Caribe, lo que culminó en una autorización del foro primario para emplazarla por edicto. Así las cosas, el 29 de febrero de 2024, Solid Core presentó *Moción Sometiendo Evidencia de Emplazamiento por Edicto*, en la que informó y acreditó que el 19 de febrero de 2024 se publicó el *Emplazamiento por Edicto* a Campo Caribe en el periódico The San Juan Daily Star y que el 21 de febrero de 2024, Solid Core notificó oportunamente una carta por correo certificado con acuse de recibo a la última dirección conocida, con copia de los documentos necesarios en cumplimiento con la Regla 4.6 (a) de Procedimiento Civil, 32 LPRA Ap. V. R. 4.6 (a).

En atención a lo anterior, a partir del 19 de febrero de 2024, Campo Caribe tenía un término de treinta (30) días, a vencer el 20 de marzo de 2024, para presentar su alegación responsiva. Dicho término transcurrió en exceso sin que Campo Caribe compareciera ante el foro primario por lo que el 22 de marzo de 2024 Solid Core presentó *Moción de Anotación de Rebeldía a Campo Caribe LLC y para que se Dicte Sentencia en Rebeldía*. Allí, la Apelante solicitó al TPI que anotara la rebeldía a Campo Caribe conforme a lo dispuesto en la Regla 45.1 de Procedimiento Civil, *supra*, y que además, conforme a lo dispuesto en la Regla 45.2 de Procedimiento Civil, dictara sentencia en rebeldía en contra de la Apelada y concediera a Solid Core los remedios solicitados en la Demanda.

Así las cosas, mediante *Orden* emitida y notificada 2 de abril de 2024, el foro primario anotó la rebeldía a Campo Caribe, e instruyó a Solid Core a presentar proyecto de sentencia en rebeldía en cinco días.[21] Concluimos que no incidió el foro primario al anotar y mantener la anotación de rebeldía a Campo Caribe, ya que una vez Campo Caribe fue emplazada por edicto, transcurrió en exceso el término de treinta días que la Apelada tenía para presentar su alegación responsiva sin que Campo Caribe

---

[21] *Véase* página 193 del Apéndice del recurso de Revisión Administrativa.

compareciera  o articulara justa causa para su incomparecencia, **por lo que la rebeldía fue bien anotada.**

Así las cosas, el 8 de abril de 2024, Solid Core presentó *Moción en Cumplimiento de Orden y Sometiendo Proyecto de Sentencia.*[22] **Dos días más tarde, el 10 de abril de 2024 el foro primario emitió *Sentencia en Rebeldía,* notificada el 11 de abril de 2024**.  Sin embargo, el 10 de abril de 2024, antes de que la *Sentencia en Rebeldía* fuera notificada, Campo Caribe compareció ante el foro primario mediante ***Urgente Moción Para que se Levante la Anotación de Rebeldía*** y argumentó que **mediante la Demanda presentada por Solid Core, la apelada intenta cobrar facturas fraudulentas que responden a un trabajo de construcción que nunca realizó**.  Así las cosas, Campo Caribe solicitó al foro primario que levantara la rebeldía y le permitiera contestar la demanda presentada por Solid Core.

**Del tracto procesal del caso ante nuestra consideración surge que solo dos días después de que Solid Core presentó el proyecto de sentencia fue que el foro primario emitió la *Sentencia en Rebeldía* a su favor.** Si bien, no procede dejar sin efecto la anotación de rebeldía a Campo Caribe, a la luz del tracto procesal y de  los hechos particulares del caso, **concluimos que incidió el foro primario al emitir la *Sentencia en Rebeldía* sin celebrar una vista evidenciaria en rebeldía** para comprobar la veracidad de cualquier aseveración mediante prueba, tales como el estado de la cuenta reclamada por Solid Core y la existencia de una buena defensa en sus méritos de Campo Caribe, conforme a lo dispuesto en la Regla 45.2 (b) de Procedimiento Civil, *supra.*

Ciertamente, aunque no incidió el foro primario al anotar la rebeldía a Campo Caribe, concluimos que **procede dejar sin efecto la *Sentencia en Rebeldía* y celebrar una vista evidenciaria en rebeldía, la cual**

---

[22] *Véase* página 199 del Apéndice del recurso de Revisión Administrativa

**deberá notificarse a Campo Caribe** toda vez que la Apelada compareció al pleito antes de notificarse la *Sentencia.*[23]

IV.

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, revocamos la *Sentencia en Rebeldía* emitida por el foro primario en contra de la Apelante y ordenamos la celebración de una vista evidenciaria en rebeldía a tenor con la Regla 45.2 (b) de Procedimiento Civil, 32 LPRA Ap. V. R.45.2 (b).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] *Véase* Regla 45.2 (b) de Procedimiento Civil, supra, que en lo pertinente dispone que **"[c]uando la parte contra la cual se solicita sentencia en rebeldía haya comparecido en el pleito, dicha parte será notificada del señalamiento de cualquier vista en rebeldía que celebre."**